RENDERED: NOVEMBER 2, 2017
TO BE PUBLISHED

Supreme Court of Kentucky

FINAL

2015-SC-000265-DG

DATE 11/27/17 Kim Redmon, DC

KEN ISAACS AND
ANNETTA CORNETT

APPELLANTS

ON REVIEW FROM COURT OF APPEALS
V.          CASE NO. 2013-CA-001188-MR
SCOTT CIRCUIT COURT NO. 12-CI-00538

JEFF CALDWELL, GREG HAMPTON, JANET          APPELLEES
HOLLAND, ROB JONES, JIMMY
RICHARDSON, JOHN SHIRLEY, MELISSA
WAITE, FRANK WISEMAN, HORACE WYNN,
GEORGETOWN-SCOTT COUNTY PLANNING
COMMISSION MEMBERS; TOWN AND
COUNTRY BANK; AND JOHN TACKETT

**OPINION OF THE COURT BY JUSTICE VENTERS**

**AFFIRMING**

Appellants, Ken Isaacs and Annetta Cornett, appeal from a decision of

the Court of Appeals which affirmed the order of the Scott Circuit Court

dismissing their appeal of a Georgetown-Scott County Planning Commission

(Planning Commission) decision. The Planning Commission had approved a

plat amendment requested by developer John Tackett to remove a planned, but

as yet unconstructed, lake from the development plan applicable to Appellants'

subdivision. Appellants sought judicial review of the Commission's action by filing an appeal in the Scott Circuit Court.

The circuit court dismissed the appeal after concluding that it lacked jurisdiction over the matter because Appellants had not properly commenced their action within the applicable statutory time period. The Court of Appeals affirmed the circuit court's order of dismissal. We granted discretionary review. For the reasons stated below, we affirm the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants are property owners in Harbor Village Subdivision in Scott County, Kentucky. On June 14, 2012, the Planning Commission approved the application of Harbor Village's developer, John Tackett, to amend the subdivision development plat so that he could eliminate a proposed lake featured on the current development plat. Appellants opposed the amendment of the plat upon the grounds that they had purchased their property in the subdivision relying upon the enhanced aesthetic and economic value that would be provided by the lake. Town and Country Bank (the Bank) owns the property upon which the lake was to be situated and is therefore a necessary party to the appeal. KRS 100.347(4) states: "The owner of the subject property and applicants who initiated the proceeding shall be made parties to the appeal."

Appellants had until July 16, 2012, to appeal the Commission's decision by initiating an action for judicial review in the circuit court.[1] On that afternoon shortly before closing time, in the office of the Scott Circuit Court Clerk, Appellants' counsel filed a pleading titled, "Appeal from Decisions of Scott County Planning Commission" (the Appeal), naming in the caption as "Defendants/Appellees," Tackett, the Bank, and the Planning Commission and its individual members.[2]

Tackett and the Planning Commission had executed a waiver of formal service of process, which Appellants' counsel filed along with the appeal. The Bank, however, had not waived service of process and so Appellants presented the circuit clerk's office with a summons form for the Bank. The summons form correctly styled the case with the names of the parties, but it did not indicate the name and address of the Bank's agent for service of process, and it did not provide the Bank's street address.

Consistent with his customary practice, Appellants' counsel requested the deputy clerk on duty to formally issue the summons and return it to him so that he could arrange to have it served, either by delivering the summons

---

[1] KRS 100.347(2) requires that the appeal be filed within thirty days; however, the thirtieth day, July 14, 2012, was a Saturday. By operation of CR 6.01 the filing deadline then became Monday, July 16, 2012.

[2] The Appellants named as parties to the appeal the Planning Commission itself and all of its members in their official capacities. The members named are Jeff Caldwell, John Shirley, Jimmy Richardson, Melissa Waite, Greg Hampton, Frank Wiseman, Janet Holland, Horace Wynn and Rob Jones. The Planning Commission and its members are referred to collectively as "the Planning Commission."

himself or having it done by the sheriff or an authorized constable.[3] That plan went awry when the deputy clerk refused to issue the summons without having the Bank's address and service of process information added to it. Counsel did not have that information with him, although it was available at his office, which was a short walking-distance away.

Although he disagreed with the deputy clerk's interpretation of her duty regarding the need to fill in the Bank's address before issuing the summons, rather than retrieving the information at his office while the clerk waited, possibly past the clerk's office's usual closing time, the attorney left the clerk's office with the summons unissued. He walked to the office of the Bank's attorney to hand-deliver a copy of the Appeal, hoping to secure the Bank's waiver of service of process. The office of the Bank's attorney had already closed for the day. Consequently, the Appeal was filed in the final few minutes of the limitations period, but the summons for the Bank was not issued by the clerk.

The next day, one day after the filing deadline, counsel returned to the clerk's office where a different deputy clerk issued the summons for the Bank as originally tendered by counsel, without the Bank's address or its registered agent information. Pursuant to counsel's directive, the clerk returned the

---

[3] Our reference to this fact should not be construed as our conclusion that the plaintiff's attorney is authorized to personally serve the summons issued to commence a civil action. Unlike the service of a subpoena in an existing action, we are aware of no rule or statute that allows for in-state service of the initial process, the summons, by an attorney. *See* KRS 454.140; KRS 454.145; KRS 70.050; CR 4.01; and CR 4.04.

4

summons form to counsel as provided by CR 4.01(c). Counsel again visited the Bank's attorney hoping to have him either accept service of process on behalf of the Bank or waive service of process. The Bank declined.

About three weeks later, Tackett moved for dismissal of the action, asserting that the circuit court lacked jurisdiction over the case because the Bank, a statutorily-required party, had not been properly included in the action within the applicable limitations period. Appellants' counsel had retained a constable to serve the summons on the Bank. The constable proceeded to attempt service of the summons and the initial pleading (the Appeal) by handing it to a Bank teller who was not the Bank's registered agent for service of process.[4]

The Bank then entered a special appearance to challenge the circuit court's jurisdiction to proceed in the absence of valid service on the Bank. After an evidentiary hearing on the motions of the Bank and Tackett to dismiss, the circuit court concluded that it lacked jurisdiction because Appellants had not strictly complied with the provisions of KRS 100.347 by taking their appeal within the statutorily-allotted time period.

Central to the circuit court's analysis was its application of Civil Rule 3.01, which states: "A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in

---

[4] Whether this constituted proper service of the summons on the Bank is not an issue before us in this case. There is in the record before us no indication that the Bank was ever served by any other means.

good faith." The circuit court reasoned that the action was not timely commenced because, although the Appeal was filed within the allotted time period, counsel's failure to diligently effectuate service of the summons on the Bank, an indispensable party, established that the Bank's summons was not issued in good faith. Consequently, the court determined, the action was not commenced before expiration of the statutory limitations period, leaving the court without jurisdiction to grant relief to Appellants. A divided Court of Appeals affirmed the circuit court's decision.

## II. ANALYSIS

We begin our analysis with the general rules applicable to judicial review of administrative agency actions, including local planning commissions. In *American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission*, our predecessor Court recognized an "inherent right of appeal from orders of administrative agencies where constitutional rights are involved, and section (2) of the [Kentucky] Constitution prohibits the exercise of arbitrary power." 379 S.W.2d 450, 456 (Ky. 1964) (internal citations and footnote omitted). The Court further noted that judicial review for "arbitrariness" included (1) administrative actions in excess of granted powers, (2) failure of the agency to provide procedural due process, and (3) the absence of substantial evidentiary support for agency findings. *Id.*

Subject to those constitutional constraints, we acknowledge the authority of the General Assembly to prescribe by statute the procedures for seeking and securing judicial review of an administrative ruling. Out of

6

deference to that authority, we require strict compliance with the statutory procedures. *Triad Development/Alta Glyne, Inc. v. Gellhaus*, 150 S.W.3d 43, 47 (Ky. 2004) ("[W]hen the right of appeal [from an administrative agency's ruling] . . . is codified as a statutory procedure, as it is in KRS 100.347, then the parties are required to strictly follow those procedures."). Based upon these principles, to obtain judicial review of the Planning Commission's approval of Tackett's proposed plat amendment, Appellants had to strictly comply with all relevant statutory requirements for bringing its action in the circuit court.

KRS 100.347(2) provides that anyone claiming to be injured or aggrieved by a final action of a planning commission may take an appeal of that action in the circuit court of the county in which the affected property lies. The statute requires that "*such appeal shall be taken* within thirty (30) days after such action." (Emphasis added.) The statute further directs: "All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review."

To determine whether Appellants strictly complied with the time limitations provided in KRS 100.347(2), we must parse what is meant by the phrase "such appeal shall be taken." KRS 23A.010(4) provides that "[t]he Circuit Court may be authorized by law to review the actions or decisions of administrative agencies, special districts or boards. *Such review shall not constitute an appeal but an original action.*" (Emphasis added.) We construe that language as a legislative directive that the judicial review of administrative actions shall be governed by the same procedural rules of the courts applicable

7

to original actions. The judicial review authorized by KRS 100.347(2) falls squarely within that mandate.

In *Transportation Cabinet, Department of Highways v. City of Campbellsville*, 740 S.W.2d 162, 164 (Ky. App. 1987), the Court of Appeals recognized that "[a]n appeal to the circuit court from an order of an administrative agency is not a true appeal but rather an original action." It logically follows that the procedural steps required to "take" an appeal from an administrative agency action are precisely the same steps required to commence any other original action in the circuit court. The rules that determine when a civil action commences, therefore, determine when an appeal of an administrative action has been taken.

CR 3.01 provides that "[a] civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith." Similarly, KRS 413.250 provides that "[a civil] action shall be deemed to commence on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action." Furthermore, "[i]f the action is commenced by the filing of the petition and the issuance of summons, and only one time period is specified, it must follow that both actions [that is, the *filing* of the petition or other initial pleading and the *issuance* of the summons] must be taken within the period of time provided in the statute." *Metro Medical Imaging, LLC v. Commonwealth*, 173 S.W.3d 916, 918 (Ky. App. 2005).

CR 4.01(1) provides that "[u]pon the filing of the complaint (or other initiating document) the clerk *shall forthwith issue the required summons and, at the direction of the initiating party,* either [(a) . . . (b) . . . or] (c) At the request of the initiating party, return the summons and [the initiating document] with necessary copies, to that party for service." (Emphasis added.)

The record plainly establishes that Appellants' counsel filed the Appeal before the expiration of the time prescribed by KRS 100.347(2) and that he simultaneously tendered a summons form which the clerk refused to issue "forthwith." Counsel for Appellants (the "initiating party") exercised the prerogative contained in CR 4.01(1)(c) and directed the clerk to return the issued summons to him so that he could arrange for its service. By choosing that option, counsel assumed the responsibility for the service of the summons by whatever means he could arrange. The lack of an address for service on the Bank afforded the clerk no justification for refusing to issue the summons "forthwith." Nothing in the civil rules or statutes governing the initiation of a civil action in circuit court permits the clerk to withhold issuance of the summons simply because the defendant's address is not stated thereon. Accordingly, the instructional guide prepared for circuit clerks by the Administrative Office of the Courts, Kentucky Circuit Court Clerks' Manual (Manual), Section 18.1, states "The Clerk is required under CR 4.01(1) to issue a summons *immediately* upon the filing of the complaint or petition." (Emphasis added.) Nothing in the Manual directs or authorizes the clerk to withhold issuance of the summons pending receipt of a defendant's address.

9

"[I]t is the official duty of the clerk to issue the summons in accordance with law, and it is not incumbent upon the plaintiff to see that he issues it in accordance with law." *Nanny v. Smith*, 260 S.W.3d 815, 817 (Ky. 2008) (quoting *Louisville & N.R. Co. v. Smith's Adm'r*, 9 S.W. 493, 495 (Ky. 1888)).

Appellants rely upon *Nanny* to support their contention that the imperfections attending the filing of their appeal in the circuit court should not be fatal to their effort to secure judicial review of the Planning Commission's decision. We agree that *Nanny* provides equitable principles that mitigate some of the procedural problems they face; but it does not entirely solve Appellants' problem.

In *Nanny*, acting without the help of a lawyer and with the applicable statute of limitations closing in, the plaintiff (Nanny) presented her complaint to the clerk, leaving it with the expectation that the clerk would prepare and issue the summons to be served upon the defendant as set forth in CR 4.01(1)(a). However, the clerk's office did not immediately file the complaint and issue the summons. Instead, the clerk's office set aside Nanny's papers and left them unattended for two days, and then the clerk finally filed the complaint and issued the summons. By that time, however, the statute of limitations had expired. The circuit court dismissed the complaint as untimely; the Court of Appeals affirmed the dismissal.

On discretionary review, we recognized that Nanny had complied with the rules for the filing of her complaint, and "should not be punished for the clerk's failure to promptly perform official duties mandated by statute and court rule."

10

Accordingly, we applied the equitable principle of "deeming done what should have been done per CR 4.01." 260 S.W.3d at 818 (citing *Robertson v. Commonwealth*, 177 S.W.3d 789 (Ky. 2005) (holding that equitable tolling is appropriate in circumstances that are beyond the party's control when the party has exercised due diligence and is clearly prejudiced)). "It is an ancient but enduring principle that equity regards as done that which ought to have been done." *Johnson v. Potter*, 433 S.W.2d 358, 362 (Ky. 1968).

We have no hesitation in concluding that the summons to be served on the Bank should have been issued by the clerk and returned to Appellants' counsel when the Appeal was filed in the waning moments of the applicable limitations period. Appellants' counsel had done all that was required by law to secure the *issuance* of the summons, and he did nothing to cause the delay. "There is no reason why that which was intended and ought to have been done then should not now be considered as having been done." *Id.*

The application of this principle in these circumstances does no violence to our policy of strict compliance with the legislative mandate for judicial review of administrative agency actions. As previously noted herein, KRS 23A.010(4) directs that judicial review of administrative agency actions or decisions constitute "original action[s]" in the circuit court. Equitable principles applicable to original civil actions are equally applicable to original actions seeking judicial review of a planning commission action. Therefore, we regard the summons for the Bank to have been issued contemporaneously with the filing of the Appeal before the expiration of the time limitation.

11

The timely *issuance* of the summons, however, does not mean that Appellants' action *commenced* within the statutory limitation period. CR 3.01 requires not simply "the issuance of the summons;" it requires "the issuance of the summons *in good faith.*" (Emphasis added.) The good faith essential for the commencement of the action has long been construed to require a contemporaneous intention on the part of the initiating party to diligently attend to the service of the summons. Our predecessor Court explained in *Louisville & N.R. Co. v. Little*:

> All the authorities are to the effect that the cause of action is not commenced until there is a bona fide intention to have the summons filled out and signed by the clerk, *accompanied by bona fide, unequivocal intention to have it served or proceeded on presently or in due course or without abandonment. Action and intention combined constitutes the commencement of the suit, because a summons filled out and signed with no intention of having it served is altogether inoperative. . . . But a summons simply filled up and lying in the office of an attorney would not constitute an issuing of the summons as provided for in the* [applicable statute].

95 S.W.2d 253, 255 (Ky. 1936) (internal citations omitted, emphasis added). "The issuance of a summons does not commence an action unless accompanied by an intent that the summons be served in due course." *Whittinghill v. Smith*, 562 S.W.2d 649, 650 (Ky. App. 1977). Similarly, "[t]he rule seems to be firmly established in this jurisdiction that in the absence of a showing of a valid excuse for the delay, a summons issued by the clerk and delivered to the plaintiff or his attorney is not deemed to have been issued in good faith until it is given to the sheriff or other proper officer to be served." *Wooton v. Begley*, 305 S.W.2d 270, 271 (Ky. 1957).

12

We disagree with the dissent's view that good faith was demonstrated because Appellants' counsel "personally tried to serve the summons shortly after the deputy circuit court clerk issued it."[5] Rather than securing the service of process, counsel's effort was devoted toward getting the Bank to waive the service of the summons. We do not equate the effort to secure the waiver of service with a good faith effort to have the summons served. Instead of acting diligently with a substantial effort to secure service of the summons upon the Bank, Appellants' counsel made only a modest attempt in a different direction to obtain a waiver of service, which the Bank declined to provide. Thereafter, counsel apparently did nothing to effectuate service for three weeks, and then Tackett moved to dismiss the case. The final effort at serving the summons was the employment of the constable, who left the summons and the initial pleading with a teller at one of the Bank's Scott County branches, thus prompting the Bank's special appearance and motion to dismiss for improper service of process, the propriety of which is not before this Court and upon which we express no opinion.

Appellants have the burden of demonstrating a bona fide, unequivocal intention to have the summons served on the Bank, presently or in due course after the filing of the Appeal, and without abandonment. A summons form, filled out and signed, but with no present intention of having it served is

---

[5] As previously noted, we do not suggest that our rules or statutes authorize the in-state service of the summons by the attorney who filed the complaint. See footnote 3.

13

altogether inoperative. *Little,* 95 S.W.2d 253; *Wooton,* 305 S.W.2d 270; *Gibson v. EPI Corporation,* 940 S.W.2d 912 (Ky. App. 1997). The delay in service of the summons was explained only by counsel's preference to obtain the Bank's waiver of service of process. The trial court considered all the foregoing events and determined that "Appellant[s] failed to issue a summons in good faith when [counsel] made no diligent effort to hire a servicer, or to personally serve [the Bank] until August of 2012," more than three weeks after the expiration of the time for commencing the action. The trial court's finding of fact on this issue is supported by substantial evidence and so is binding in our review. CR 52.01.

Appellants direct our attention to *Rucker's Adm'r v. Roadway Express, Inc.,* 131 S.W.2d 840 (Ky. 1939), which holds that an action may be commenced in good faith even if the attorney does not immediately serve the summons on a party so long as the delay under the circumstances is not sufficiently lengthy to negate good faith. In *Rucker's Adm'r,* our predecessor Court held that a delay of six weeks in serving a party could show negligence, but not necessarily bad faith, depending upon the reason for the delay. During this interval, the attorney was attempting to determine the proper agent to serve, his wife was ill for three weeks, and the summons was misfiled, requiring him to obtain another one. The Court explained that the attorney's actions likely amounted to negligence, but that "the circumstances shown in this particular case are not such as to negate a lack of good faith at the time

14

the summons was issued or to indicate abandonment of intention to have it executed in due course." *Id.* at 843.

The circumstances that confronted the trial court in this case are distinguishable from *Rucker's Adm'r*, where the delay resulted from the confluence of several extraordinary events. No similar factors were presented here. After failing in his attempt to get the Bank to waive service of process, counsel did nothing to advance the service upon the Bank for three weeks, when he engaged the constable shortly before the Bank moved for dismissal. In stark contrast to *Rucker's Adm'r*, Appellants offer no compelling explanation for the delay other than counsel's preference for securing a waiver of service of process.

We agree with the circuit court and the Court of Appeals that the Appellants have failed to comply with the "good faith" element in the issuance of the summons. Consequently, we cannot regard the action as having been commenced before the expiration of the time allotted by KRS 100.347(2).

### III. CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

All sitting. Minton, C.J.; Hughes, Keller, and VanMeter, JJ., concur. Wright, J., concurs in part and dissents in part by separate opinion in which Cunningham, J., joins.

WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART: I concur with the majority's excellent analysis and determination that "we regard

15

the summons for the Bank to have been issued contemporaneously with the filing of the appeal before the expiration of the time limitation." The majority correctly states that good faith requires the party to diligently attend to the service of the summons. However, I disagree that Appellants failed to comply with the "good faith" element. In holding otherwise, both lower courts and the majority all consider the wrong time period. Therefore, I dissent in part.

CR 3.01 requires "the issuance of a summons . . . in good faith." In order to determine whether the summons was issued in good faith, we must examine the circumstances and the actions of Appellants' attorney, Mr. Higdon. Higdon had contacted two of the Appellees and obtained waivers of service from them prior to filing the complaint. The deputy circuit court clerk who filed the action improperly refused to issue the summons for the Bank, the only remaining party. Unable to obtain a summons from the clerk, Higdon personally carried the complaint to the offices of the Bank's local counsel. Unfortunately, the office was closed. Improperly denied a summons by the deputy circuit court clerk, Higdon tried to obtain a waiver of service before the expiration of time in which to file the case.

The next day (a day after the period for filing the case had expired), Higdon returned to the circuit court clerk's office and a different deputy clerk issued the summons. I agree with the majority that the deputy clerk improperly refused to issue the summons when the appeal was filed. Therefore, equitable tolling would require that the summons be considered as

16

issued contemporaneously with the filing of the appeal—just as the majority holds.

Higdon was unable to take any action to serve the summons until the deputy clerk actually issued it the day after Higdon filed the appeal. The trial court found that:

> Mr. Higdon testified that he sought to retain the summons so he could serve it himself or via the constable for a smaller fee than the sheriff's office. Mr. Higdon then testified he attempted to serve the summons to Mr. Lankford (on behalf of Town and Country Bank) at his office only once. On that occasion the door was locked. Mr. Higdon never again attempted formal service on [Town] and Country Bank until he retained Constable Bobby Townsend, who successfully served Town and Country Bank on August 10, 2012.

The trial court found that Higdon, personally tried to serve the summons on the Bank after the summons was issued. The summons was issued in good faith since Higdon personally tried to serve the summons shortly after the deputy circuit court clerk issued it. The question that now confronts us is whether Higdon's delay in taking additional steps constitutes an abandonment of good-faith intent to serve the summons.

Since the trial court found that Mr. Higdon did attempt to serve the summons, the question before the court was whether he abandoned good-faith service due to the delay between his attempt to serve the summons and retaining the constable to serve the summons. The trial court found that Higdon retained Constable Bobby Townsend to serve the summons and based it's ruling on when the constable served the Bank on August 10, 2012. The trial court's order was erroneously based on the court's determination that "Appellant failed to issue a summons in good faith . . . ." The trial court based

17

it's ruling on the August 10 date of service, which occurred, as the majority points out, more than three weeks after issuance of the summons. The trial court should not have used this August 10 date in its evaluation of whether Higdon abandoned the good-faith effort to serve the summons. Rather, the trial court should have considered that Higdon made an additional effort between the issuance and the service of the summons.

As previously noted, Higdon attempted to serve the summons personally. When that failed, he eventually gave up on either obtaining a waiver of service or personally serving the Bank and retained Constable Bobby Townsend. Delivery of the summons to the constable for service demonstrates a continuing good-faith effort at service. Therefore, the period of time the court should have considered in determining whether there was a continuing good-faith effort is the time between Higdon's attempt at personal service and his delivery of the summons to the constable.

This ruling caused confusion in the Court of Appeals, as demonstrated in that court's majority opinion which stated "[t]wo days after receiving Tackett's motion to dismiss, Appellants' attorney retained a constable to serve the summons on the Bank." In actuality, Higdon retained the constable to serve the summons four days prior to the filing of Tackett's motion to dismiss. The Court of Appeals' majority opinion also stated "[i]n addition, counsel waited for three more weeks to retain a constable to effect service on the Bank, and even then, only in response to Tackett's motion to dismiss." This misunderstanding

18

of the sequence of events and time periods involved is repeated throughout the Court of Appeals' majority and concurring opinions.

The delay in this case is less than the delay allowed in *Rucker's Adm'r v. Roadway Express, Inc.*, 131 S.W.2d 840. In the *Rucker's* case, there was a delay of six weeks between issuance of the summons and service. The excuse presented by the attorney in that case was that his wife was in the hospital for three weeks, and then he misfiled the summons, and had to obtain another. Even if we deduct the three weeks the attorney's wife was in the hospital and allow a day for the re-issuance of the summons, the attorney in that case still had a 20-day delay. Our predecessor court held that delay was insufficient to demonstrate abandonment of good-faith intent to serve the summons. In the current case, the date between the issuance of the summons and Higdon giving it to the constable for service was 17 days or less. Is that delay so egregious that we will abandon the precedent set in *Rucker's* and bar the parties from having their case resolved on its merits?

In another case, *Title Ins. & Tr. Co. v. City of Paducah*, 275 Ky. 392 (1938), this Court's predecessor held that because the summonses in question were delivered to the sheriff's office, the suit was commenced in good faith. It had no bearing on the court's decision that the sheriff did not serve all of the summonses. The mere fact that they were conveyed to the sheriff's office was enough to substantiate good faith. The same should hold true here. Once Appellants conveyed the Bank's summons to the constable, they were acting in good faith.

19

The timeline is extremely important in determining good faith in this case. Higdon took the following actions demonstrating his good faith: he obtained waivers of service from two of the parties prior to filing the complaint; when the deputy circuit court clerk refused to issue the summons, Higdon attempted to deliver the appeal to the Bank's attorney seeking waiver of service; after a different deputy circuit court clerk issued the summons, Higdon attempted to personally serve the summons; he held the summons for less than 17 days in hopes of personally serving it or obtaining a waiver of service; and Higdon retained a constable to serve the summons. Then, four days after Higdon's retention of the constable, Tackett filed a motion to dismiss. Finally, three days later, the constable served the summons.

In conclusion, the question before the Court is whether Appellants abandoned good-faith service of the summons. The time period that must be considered in resolving this question is that between Higdon's attempt to personally serve the summons and his delivery of the summons to the constable for service. The trial court erroneously based its ruling upon the time period between filing of the appeal and service of the summons—as do both the Court of Appeals and the majority opinion of this Court. Therefore, the Court of Appeals' opinion should be reversed and the matter remanded to the trial court to determine whether there was abandonment of good faith to serve the summons between Higdon's attempt to serve the summons and delivery of the summons to the constable for service.

Cunningham, J., joins.

COUNSEL FOR APPELLANTS KEN ISAACS AND ANNETA CORNETT:

W. Henry Graddy IV
Dorothy Thomps Rush
W.H. Graddy & Associates

Randal Alan Strobo
Strobo Barkley, PLLC

COUNSEL FOR APPELLEES JEFF CALDWELL; GREG HAMPTON; JANET
HOLLAND; ROB JONES; JIMMY RICHARDSON; JOHN SHIRLEY; MELISSA
WAITE; FRANK WISEMAN; AND HORACE WYNN, MEMBERS OF
GEORGETOWN-SCOTT COUNTY PLANNING COMMISSION:

Charles Perkins
209 East Main Street
Georgetown, KY 40324

COUNSEL FOR APPELLEE TOWN AND COUNTRY BANK:

R. Bruce Lankford
Lankford & Lankford

COUNSEL FOR APPELLEE JOHN TACKETT:

Harold F. Simms
112 North Court Street
Georgetown, KY 40324